FILED
2013 Nov-20  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JODY BUTTRAM,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **4:13-cv-00390-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **THE SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Jody Buttram brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. Procedural History

Buttram filed his application for Title XVI Supplemental Security Income

on April 20, 2010 (R. 108–11),[1] alleging a disability onset date of June 15, 2007,

(R. 126), due to diabetes, vision and renal complications of diabetes, high blood

pressure, and knee and leg problems caused by both diabetes and a 2006[2] car

accident, (R. 130). After the SSA denied his application on June 16, 2010, (R.

56–60), Buttram requested a hearing, (R. 64–66). At the time of the hearing on

September 23, 2011, Buttram was 40 years old, (R. 32), had a tenth grade

education, *id.*, and past relevant medium, semi-skilled work as a light truck driver

and very heavy, unskilled work as a masonry helper, (R. 49). Buttram has not

engaged in substantial gainful activity since April 19, 2010[3], the date he applied

for benefits. (R. 15).

The ALJ denied Buttram's claim on November 4, 2011, (R. 10–21), which

became the final decision of the Commissioner when the Appeals Council ("AC")

refused to grant review on February 1, 2013, (R. 1–4). Buttram then filed this

action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3), on February

---

[1] Buttram also filed an application for disability insurance benefits (R. 106), but the SSA found his earnings insufficient to qualify him for coverage under Title II of the Act, (R. 61). Buttram does not appeal that decision.

[2] Although Buttram's application for benefits states that the car crash occurred in 2007, (R. 130), his medical records indicate it occurred in 2006, *see* (R. 179).

[3] There was some ambiguity in the record regarding wages Buttram may have earned in 2010, but Buttram denied receiving the earnings in question, and the ALJ chose to afford him "the full benefit of a doubt." (R. 15).

26, 2013. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If they are supported by substantial evidence, the court must affirm the Commissioner's

factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

> (3)     whether the impairment meets or equals one listed by the Secretary;

> (4)     whether the claimant is unable to perform his or her past work; and

> (5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it

can be reasonably expected to give rise to the alleged pain.[4]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the

---

[4] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> [ALJ], as a matter of law, has accepted that testimony as true.  Implicit
> in this rule is the requirement that such articulation of reasons by the
> [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for

refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not

supported by substantial evidence, the court must accept as true the pain testimony

of the plaintiff and render a finding of disability.  *Id*.

### IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially

determined that Buttram had not engaged in substantial gainful activity since his

application date and therefore met Step One. (R. 15). Next, the ALJ acknowledged

that Buttram's severe impairments of insulin dependent diabetes mellitus, edema,

obesity, chronic back pain, chronic extremity pain, osteoarthritis, and hypertension

met Step Two. (R. 15–16). The ALJ then proceeded to the next step and found that

Buttram did not satisfy Step Three since he "does not have an impairment or

combination of impairments that meets or medically equals the severity of one of

the listed impairments." (R. 17). Although the ALJ answered Step Three in the

negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded

to Step Four, where she determined that Buttram

> has the residual functional capacity ["RFC"] to perform sedentary
> work as defined in 20 CFR 416.967(a) except he can stand/walk two

hours in an eight-hour day; can sit eight-hours [sic] in an eight-hour day; can lift/carry twenty pounds occasionally and ten pounds frequently; can occasionally push/pull with the left lower extremity; occasionally climb ramps and stairs; can occasionally bend, squat, kneel, crouch and crawl; can never climb a ladder, rope or scaffolding; must avoid all exposure to hazardous machinery, unprotected heights and commercial driving; must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity and vibration; and can understand, remember and complete simple instructions.

(R. 19). In light of Buttram's RFC, the ALJ determined that Buttram "is unable to perform any of his past relevant work" because "the demands of [Buttram's] past relevant work exceed [his] [RFC]." (R. 21). Lastly, in Step Five, the ALJ considered Buttram's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 201.28 and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [Buttram] can perform." (R. 22). Because the ALJ answered Step Five in the negative, she determined that Buttram was not disabled.

## V. Analysis

The court turns now to Buttram's contentions that (1) the ALJ failed to evaluate his impairments under now-defunct listing 9.08, which was in effect when he applied for benefits, (2) Buttram is entitled to benefits because he meets

listings 1.02, 1.03, and/or 1.05, (3) the ALJ failed to find that Buttram meets listing 12.02, (4) the ALJ failed to sufficiently explain her finding that Buttram's testimony was not entirely credible, and (5) the ALJ's hypothetical questions to the vocational expert did not adequately encompass Buttram's limitations. Doc. 11 at 10–21. For the reasons stated below, the court finds that the ALJ applied the correct legal standards and her opinion is supported by substantial evidence.

A.    *Listing 9.08*

When Buttram applied for benefits, listing 9.08, which found a claimant disabled if he had been diagnosed with diabetes mellitus and suffered from neuropathy, frequent episodes of diabetic ketoacidosis [DKA], or severe retinal inflamation, was still in use. Doc. 11 at 11. However, effective June 7, 2011, the SSA published new rules that deleted listing 9.08, *see* Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. 19,692 (Apr. 8, 2011) (to be codified at 20 C.F.R. pts. 404 and 416), and required claimants suffering from an endocrine disorder, including diabetes, to show that their illness caused them to meet a listed condition for another body system in order to satisfy Step Three of the SSA's five-part sequential analysis,[5] *see* 20 C.F.R. pt. 404, subpt. P, app. 1 §

---

[5] For example, recurrent episodes of diabetic ketoacidosis can result in cardiac arrhythmias, which are evaluated under listing 4.00, intestinal necrosis, which is evaluated under listing 5.00, and cerebral edema and seizures, which are evaluated under listing 11.00.

9.00. Buttram argues that the ALJ should have used listing 9.08 because it was in effect when he applied for benefits. Doc. 11 at 11. Buttram, however, offers no legal support for this argument. Moreover, the SSA clearly intended that the new rules would apply "to new applications filed on or after the effective date of the final rules *and to claims that are pending on and after the effective date.*" Revised Medical Criteria for Evaluating Endocrine Disorders, 76 Fed. Reg. at 19,692 (emphasis added). Additionally, the SSA anticipated situations such as this, in which a claimant urges a court to invoke the old rule, rather than the more stringent rule that became effective after the application but before the SSA adjudicated his claim, and stated "[w]e expect the Federal courts will review our final decisions using the rules that were in effect *at the time we issued our decisions*." *Id.* at 19,692–93 n. 3 (emphasis added).

Whether the SSA can apply a new rule to pending claims without exceeding its congressionally delegated authority appears to be a matter of first impression before the federal courts in the diabetes context. However, in 1999, the SSA made a similar revision to its provisions governing obesity. Sitting en banc, the Sixth Circuit held that applying the revised listing to pending claims did not have a impermissible retroactive effect. *Combs v. Comm'r Soc. Sec.*, 459 F.3d 640, 650

(6th Cir. 2006) (en banc).[6] Although *Combs* is not binding on this court, in the absence of any justification for a contrary conclusion offered by Buttram, the court adopts its reasoning and finds that the ALJ applied the correct legal standard when she evaluated the effects of Buttram's diabetes pursuant to revised listing 9.00 rather than now-defunct listing 9.08.

B.     *Listings 1.02, 1.03, and 1.05*

Buttram contends next that he is entitled to benefits because he meets listings 1.02, 1.03, and/or 1.05. Doc. 11 at 12–13. Buttram's brief does not include any additional explanation supporting this argument, other than to quote the text of these listings in their entirety, along with the SSA's definition of ineffective ambulation. *Id.* However, based on the medical records Buttram filed with his brief, which detail ongoing struggles with infection, doc. 11-1 at 7, and complications from a previous ankle fracture, *id.* at 9, 11, in his right leg during 2012, culminating in the March 2013 amputation of his lower right leg, *id.* at 1–6, the court infers that Buttram wishes it to find that he meets these listings based on

---

[6] *But see Nash v. Apfel*, No. 99-7109, 2000 WL 710491, at *2 (10th Cir. 2000) (holding that applying the revised obesity rules to pending claims was impermissible retroactive rulemaking); *Cherry v. Barnhart*, 327 F. Supp. 2d 1347, 1360 (N.D. Okla. 2004) (same); *Portlock v. Barnhart*, 208 F. Supp.2d 451 (D. Del. 2002) (same); *Kokal v. Massanari*, 163 F. Supp. 2d 1122 (N.D. Cal. 2001) (same). The court notes that, like the Sixth Circuit's decision in *Combs*, none of these cases are binding authority, and that it finds *Combs*' reasoning more persuasive than that employed by the courts reaching the opposite conclusion.

his 2013 amputation. The court is sympathetic toward the deterioration Buttram's

health has suffered since the ALJ issued her opinion in November 2011. But,

federal courts are limited to reviewing "the decision of the ALJ as to whether the

claimant was entitled to benefits during a specific period of time, which period

was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d

1276, 1279 (11th Cir. 1999). "Evidence of deterioration of a previously-

considered condition may subsequently entitle a claimant to benefit from a new

application, but it is not probative of whether a person is disabled during the

specific period under review." *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863

(11th Cir. 2012) (citing *Wilson*, 179 F.3d at 1279). As the Appeals Council noted

when it declined to consider Buttram's medical records dated subsequent to the

ALJ's decision, the proper use for such evidence is in support of a new claim. (R.

2).

     In the alternative, if Buttram intended to argue that the ALJ erred in not

finding he met listings 1.02, 1.03, and/or 1.05, that argument fails as well. To meet

Listing 1.05, a claimant must be an amputee. *See* 20 C.F.R. pt. 404, subpt. P, app.

1 § 1.05. Buttram's leg was amputated in March 2013. Doc. 11-1 at 1. He clearly

did not meet listing 1.05 when the ALJ issued her decision on November 4, 2011.

The ALJ explicitly found that Buttram did not meet listing 1.02. (R. 18), which

contemplates disability due to major dysfunction of a joint. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. If the affected joint is the hip, knee, or ankle, the claimant must be unable to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02(A). To ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living."  20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2). The ALJ found "no evidence of [Buttram's] inability to ambulate." (R. 18). The record supports this conclusion. A consultative examination report noted that Buttram "has a normal gait" and was "able to walk without any assisted device." (R. 213); *cf.* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2) (describing "the inability to walk without the use of a walker, two crutches or two canes" as an example of an inability to ambulate). At the hearing before the ALJ, Buttram stated that he could walk "four or five blocks" before his swollen leg would begin to bother him, (R. 46), and in his self-prepared function report, he stated he could walk about half a mile without needing to stop to rest (R. 155); *cf.* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2) (describing "the inability to walk a block at a reasonable pace on rough or uneven surfaces" as an example of an inability to ambulate). The court finds the observations of the examining physician and Buttram's own statements concerning his ability to walk distances constitute substantial evidence supporting

the ALJ's conclusion that Buttram could ambulate effectively.

Finally, although Buttram could theoretically base his claim that he meets listing 1.03, which contemplates disability due to reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03, on the effects of the surgery he underwent following his 2006 car accident, *see* (R. 182), meeting listing 1.03 is predicated on a claimant being unable to ambulate effectively, *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03. The definition of ineffective ambulation is the same for the purposes of listings 1.02 and 1.03, *see* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.02(A), 1.03 (referencing the same definition of ineffective ambulation in 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)), and, as explained above, the ALJ's conclusion that Buttram could ambulate effectively is supported by substantial evidence. Consequently, substantial evidence also supports the ALJ's decision that Buttram did not meet listing 1.03.

This court is not a proper venue to determine whether Buttram became disabled subsequent to the ALJ's decision. If he has not done so already, Buttram is free to pursue that claim in a new filing with the SSA. However, as to the claim before this court, substantial evidence supports the ALJ's conclusion that Buttram could ambulate effectively at the time she issued her decision. Consequently, he

does not meet listings 1.02, 1.03, and/or 1.05.

C.    *Listing 12.02*

Buttram argues that he is entitled to benefits because he meets listing 12.02, doc. 11 at 13–15, which contemplates finding a patient is disabled based on an organic mental disorder, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02.  Although the ALJ did not explicitly address whether Buttram meets listing 12.02 in her opinion, she evaluated evidence pertaining to his mental health when conducting Step Two of the SSA's five-step analysis, and concluded Buttram's depression was a non-severe impairment. (R. 17). The ALJ noted that Buttram stated he was depressed because his injured leg made him unable to work, and that he was not receiving disability benefits and consequently was forced to rely on his aging parents for his needs. (R. 16). The ALJ also noted that Buttram claimed he no longer socialized because of his depression, and that he had some "trouble concentrating, remembering and thinking." (R. 17). However, the ALJ found that this evidence was mitigated by the fact that Buttram "has received no mental health treatment and has not been prescribed any psychotropic medications," (R. 16), and that his mental state appeared to have little impact on his ability to carry out activities of daily living, (R. 17). In sum, substantial evidence supports the ALJ's conclusion that Buttram's depression *did not* rise to the level of a severe impairment under

Step Two of the SSA's five-step analysis. *Id*. Logically, it follows that the same substantial evidence supports a finding that Buttram's depression does not meet the even more stringent requirements of listing 12.02.

Additionally, to meet listing 12.02, a claimant must prove the "[m]edically documented history of a chronic organic mental disorder of at least 2 years' duration . . . with symptoms or signs currently attenuated by medication or psychosocial support," 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02(C), or demonstrate "a loss of specific cognitive abilities or affective changes and the medically documented persistence" of one of an enumerated list of mental impairments, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.02(A). By his own admission, Buttram has never received any treatment for a mental health condition. (R. 41). Consequently, he cannot meet listing 12.02 pursuant to the first condition. With regards to the second, in his brief, Buttram included a lengthy medical history containing seventeen entries describing many episodes of hypoglycemia and hyperglycemia, which he claims indicates he meets listing 12.02. Doc. 11. at 14–15. However, only three entries mention Buttram's mental state.[7] *See* doc. 11 at 14, 15 (noting that Buttram presented with an "altered mental

---

[7] Buttram also presented with an altered mental status when he sought emergency treatment on May 2, 2009, (R. 255), and March 14, 2011, which he did not indicate in his brief. These additional two episodes do not affect the court's analysis.

state" when he received emergency treatment for acute hypoglycemia on July 20,

2010,[8] when he received treatment for acute hypoglycemia on February 9, 2011,

and when he received emergency treatment for acute hyperglycemia on February

28, 2011). On each  of these occasions, Buttram's blood sugar levels constituted

medical emergencies. By point of contrast, Buttram's medical records from the

Dekalb Interfaith Clinic,[9] where Buttram received routine treatment for diabetes,

do not appear[10] to contain any references to Buttram displaying an altered mental

status. *See* (R. 191–210; 223–27). Indeed the only reference to Buttram's mental

health is a dietician's notation that Buttram told her he was depressed because he

could not work, did not receive disability, and was forced to rely on his elderly

parents, and query as to whether Buttram might benefit from meeting with a

counselor. (R. 226). In sum, although the record contains several examples of

Buttram displaying an altered mental state while in the throes of a medical

---

[8] It is unclear from Buttram's medical records whether he actually displayed an altered mental status on July 20, 2010. Medical Staff described him as "alert" and "oriented" when he arrived at the hospital via emergency medical services, (R. 248), and a physician observed "no evidence . . . of alteration in mental state" (R. 247). An hour later, the same physician noted Buttram displayed "altered mental status," *id.*, but then immediately discussed a treatment plan with Buttram, who agreed to comply with it, and discharged him, (R. 246).

[9] The records cover a June 14, 2007 visit and 19 visits over the period extending from January 14, 2010 to September 6, 2011. Most of these records are handwritten and border on illegible.

emergency, it does not demonstrate the "medically documented persistence" of a mental disorder required for a claimant to meet listing 12.02. Consequently, substantial evidence supports finding that Buttram does not meet listing 12.02.

D.    *Buttram's Credibility*

Buttram argues that the ALJ failed to articulate sufficient reasons for failing to fully credit his testimony regarding the pain he experiences.[11] (R. 18–21). Under this circuit's pain standard, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Hale*, 831 F.2d at 1012. Contrary to Buttram's contention, the ALJ provided adequate reasons for discrediting Buttram's pain testimony: "[t]he evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms. The claimant's activities of daily living, the medical treatment records . . ., findings upon examinations, diagnostic findings, the activity level reported in the claimant's documentary submissions, and observations made at the hearing, suggest greater sustained capacity than described in the testimony." (R. 21). After reviewing the

---

[11] At the hearing, the ALJ asked Buttram if he could work five days a week. (R. 46). Buttram answered that "at least a couple of days a week I feel so sick that I, I don't feel like I could do anything." (R. 47).

record as a whole, the court finds that the ALJ's reasons are supported by substantial evidence, and thus adequate under the pain standard.

### 1.     Buttram's daily activity level

In Buttram's self-prepared function report, dated May 12, 2010, and at the hearing before the ALJ on September 23, 2011, Buttram stated that he performs a variety of daily activities. He asserted that he cooks, (R. 35, 152), helps his father in the garden, (R. 36, 150), does laundry, (R.35, 152), and shops for groceries if he has transportation to the store[12], (R.35, 153). Additionally, he testified that he could wash dishes, iron, sweep, mop, and make beds, (R. 35), stand or walk for two hours and sit for five or six hours in an eight hour day, (R. 40), and, under normal circumstances[13], lift ten or fifteen pounds (R. 41). Accordingly, substantial evidence supports the ALJ's finding that Buttram's own account of his daily activities does not support his subjective testimony of complete incapacitation.

### 2.     Buttram's medical records

Buttram's medical records indicate he sought emergency medical treatment nine times between June 15, 2007, his alleged disability onset date, and November

---

[12] Buttram's driver's license was suspended after he received tickets for not having insurance. (R. 35).

[13] At the time of the hearing, Buttram suffered from a broken foot that he stated impeded his lifting ability. (R. 41).

14, 2011, the date the ALJ issued her opinion. *See* (R. 238–64; 288–98; 323–27). On three of these occasions, doctors hospitalized Buttram to treat DKA. *See* (R. 253–60) (hospitalization from May 2–3, 2009); (R. 261–64 (hospitalization from February 28–March 2, 2011); (R. 294–317) (hospitalization from March 31, 2011–April 4, 2011). The court notes that each of these hospitalizations occurred after Buttram stopped taking insulin. *See* (R. 260, 261) (noting on May 2, 2009 that "[Buttram] said he has not been taking [insulin] for the last few days" and "the patient is very noncompliant with medications and diet"); (R. 261) (noting on February 28, 2011 that "in reviewing things with the patient he had stopped taking his insulin prior to admission thinking that his blood sugar was too low"); (R. 314) (noting on March 31, 2011 "[patient] is to be taking insulin but states that he did not take it in the last couple of days because he was having hypoglycemia"). The court also notes that in each of these instances, Buttram responded quickly when treated with insulin. *See* (R. 253) (following May 2, 2009 admission, Buttram "was hydrated aggressively and [given an] insulin drip initially and his sugars came down. His acidosis resolved and he started to eat and [stopped] vomiting"); (R. 261) (following February 28, 2011 admission for DKA, Buttram was treated with an insulin drip and the acidosis resolved by the following day); (R. 294) (following March 31, 2011 admission for DKA, Buttram "was vigorously given

IV fluid hydration as well as placed on an insulin drip[, and] within 24 hours he was out of ketoacidosis"). On three other occasions, Buttram presented at the emergency room with low blood sugar.[14] *See* (R. 247–48) (July 20, 2010); (R. 292–93) (February 9, 2011); (R. 288–90) (March 14, 2011). In each of these instances, Buttram was treated and released without being admitted. *Id.* One hospitalization and one emergency room visit were related to an infected wound Buttram suffered in late May and early June 2009. (R. 238–46; 249–52). Finally, on one occasion, Buttram visited the emergency room seeking treatment for a broken foot he sustained after falling in August 2011. (R. 323–26).

The record also indicates that Buttram went for long periods without seeking medical treatment. Buttram's medical records indicate that he did not seek any medical treatment between June 14, 2007, and May 2, 2009, a period of almost two years. There is another gap in treatment between June 5, 2009, and January 14, 2010, a period of seven months. Additionally, the court notes that after Buttram began receiving regular treatment for diabetes at the Dekalb Interfaith Clinic in January 2010, (R. 210), he only sought emergency medical treatment one time during that year, (R. 247–48). Failure to seek medical treatment may

---

[14] On each of these emergency room visits, Buttram also presented with extremely high blood pressure. See (R. 247, 288, 292).

undermine a claimant's testimony regarding the severity of his condition. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that the ALJ properly discredited testimony by a claimant alleging he had experienced neck pain for decades by "explaining that this pain had not require[d] routine or consistent treatment, and [the claimant] often went for months or years between complaining of this pain to his physicians").

In sum, Buttram's medical records indicate that his most severe medical emergencies were predicated by noncompliance and that he quickly responded to treatment. Moreover, the records indicate that he went for long periods without receiving medical attention, which may give rise to an inference that his condition was not severely debilitating during those periods. Consequently, substantial evidence supports the ALJ's finding that Buttram's medical records do not support his subjective testimony of complete incapacitation.

### 3. Dr. Ismail's examination and diagnostic findings

Dr. Younus M. Ismail administered a consultative exam to Buttram on May 27, 2010. *See* (R. 212–14). His findings were largely unremarkable. Dr. Ismail noted that Buttram was of average height and overweight. (R. 213). Buttram was alert, talkative, and did not appear to be in acute distress during the exam. *Id.* He displayed no signs of diabetic retinopathy, and his vision was 20/20 in both eyes.

*Id.* His cervical spine was normal. *Id.* His breathing, and heart sounds were normal. *Id.* His abdomen was soft and non-tender. *Id.* His extremities showed no sign of edema. *Id.* The muscle strength in his extremities was normal. *Id.* His hand grip and manipulation were normal. *Id.* He could move his shoulders, elbows, and wrists normally. *Id.* He could move his hips, right knee and ankles normally. *Id.* His dorsolumber spine was normal. *Id.* His gait was normal and he could walk without any assisted devices. *Id.* His skin was normal. Dr. Ismail found no evidence of neurological defects. (R. 214).

Dr. Ismail noted mild spasms in Buttram's cervical paraspinal muscles. (R. 213). Buttram also felt pain in his left knee during the exam, especially when he flexed and extended it, and his range of motion when he attempted to flex his left knee was limited. *Id.* He was unable to perform heel-toe walking and squatting because of the knee pain. *Id.*

Based on his examination, Buttram's medical history, and statements Buttram made during the exam, Dr. Ismail diagnosed him with chronic back pain, chronic extremity pain, osteoarthritis, hypertension, and insulin-dependent diabetes mellitus. (R. 214). Dr. Ismail noted that Buttram was "presently not seeing any doctor[15] [and] not getting any proper treatment for the knee and the

---

[15] Buttram's medical records indicate he was attending monthly appointments at the Dekalb Interfaith Clinic at the time of Dr. Ismail's examination. *See* (R. 191, 232).

back pain," and that Buttram would benefit from proper evaluation, treatment, and occupational and physical rehabilitation. *Id.* Dr. Ismail also prepared a physical RFC assessment pursuant to his exam, and noted that "[medically diagnosed impairments] do exist that would produce some symptomaly, however, not to the extent [Buttram] alleges, therefore [Buttram's] allegations of symptoms are found to be partially credible." (R. 220).

Dr. Ismail's examination indicated that Buttram suffered from no major physical impairments, and that his condition potentially could be improved with treatment and therapy. Therefore, substantial evidence supports the ALJ's finding that Buttram's medical records do not support his subjective testimony of complete incapacitation.

For the reasons stated above, substantial evidence supports the ALJ's finding that Buttram's self-reported daily activity levels, medical records, and Dr. Ismail's examination and diagnoses do not support Buttram's subjective testimony of complete incapacitation. Therefore, the ALJ articulated sufficient reasons for not fully crediting that testimony.

*5.   Inadequate hypothetical*

Buttram claims the ALJ erred by presenting inadequate hypothetical questions to the VE. When a VE testifies at a claimant's hearing before an ALJ, he is ordinarily asked questions regarding whether the claimant can perform past

relevant work or other jobs in the national economy. In these circumstances, the VE's responses are based on hypothetical questions about the claimant's established impairments and abilities. For an ALJ to use a VE's testimony as substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Buttram claims the ALJ should have asked the VE if Buttram's ability to work would be limited by his absences due to complications of diabetes. Doc. 11 at 15.

Contrary to Buttram's contention, after the VE described jobs available to a person with Buttram's limitations, the ALJ asked the VE about the impact of absenteeism on those positions:

"Q: What would be the acceptable absenteeism rate for the jobs that you just described to me?

A: One absence per month."

(R. 51). By finding that Buttram could work in spite of the VE's testimony that a hypothetical person with Buttram's limitations would be unable to work if he had more than one absence a month, the ALJ implicitly determined that Buttram would not have more than one absence a month. *See Adams v. Comm'r of Soc. Sec.*, No. 13-10712, 2013 WL 5746150, at *1 (11th Cir. Oct. 24, 2013) (finding that when an ALJ concluded the claimant could work in spite of a VE's testimony that a

hypothetical person with the claimant's limitations would not be able to work if he had two unexcused absences a month, the ALJ implicitly determined that the claimant would not have two unexcused absences a month).

The ALJ's determination is supported by substantial evidence. Dr. Ismail's examination and subsequent RFC report, to which the ALJ gave good weight, *see* (R. 21), make no mention of Buttram missing work due to complications of diabetes. Significantly, of all the doctors Buttram encountered during his hospitalizations, emergency room visits, and routine care, only one made a reference to taking time off work.[16] Nor do Buttram's hospitalizations and emergency room visits indicate he would have an unacceptable absentee rate. The medical records Buttram submitted in support of his application for benefits indicate that he was hospitalized four times for a total of sixteen days and sought emergency attention for his condition five additional times between June 15, 2007, his alleged disability onset date, and November 4, 2011, the date the ALJ issued her opinion. *See* (R. 238–64; 288–98; 323–27). In sum, twenty-one days over a four-year period are implicated by Buttram's emergency room visits and hospitalizations. This does not rise to the level of more than one absence per month over the course of the alleged fifty-one month disability period. *See Davis*

---

[16] Buttram's medical records from his July 20, 2010 emergency room visit indicate that his treating physician told him to take three days off work. (R. 246).

*v. Astrue*, No. 8:11-cv-2398-T-TGW, 2012 WL 6213124, at *6 (M.D. Fla. 2012) (stating that fourteen absences due to hospital visits over a fifteen-month period would be acceptable by an employer who tolerated one absence a month). As noted above, the medical record also contains evidence of long gaps when Buttram did not seek medical attention, which may indicate that his condition was not severe during that time and consequently that he would not be absent from work due to diabetic complications. Finally, to the extent that Buttram's subjective testimony about his condition supports a conclusion that he would miss work more than once a month due to diabetic complications, as stated above, the ALJ articulated adequate reasons for discrediting that testimony.

Because the substantial evidence set forth above supports the ALJ's implicit determination the Buttram would not miss more than one day of work a month, the ALJ did not err in disregarding the VE's testimony that the jobs available to someone with Buttram's limitations would only tolerate one absence a month.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Buttram is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 20th day of November, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE